IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMUEL PEARSON, | ) |
| Plaintiff, | ) |
| v. | ) 14 C 10070 |
| UNITED DEBT HOLDINGS, LLC, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samuel Pearson filed a class action complaint against United Debt Holdings, LLC ("UDH") alleging that UDH violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, when it attempted to collect debts that Pearson alleges were void and unenforceable. UDH moved to compel arbitration on an individual basis and dismiss the Complaint. (Dkt. No. 27). Specifically, UDH argues that the loan agreement into which Pearson entered contained a binding arbitration provision and a class action waiver. In the alternative, UDH argues that that the Court should dismiss or stay the case based on the doctrine of tribal exhaustion because the loan itself was issued under the laws of the Chippewa Cree Tribe. For the reasons that follow, the motion is denied in its entirety.

**BACKGROUND**

In 2014, Pearson began to receive calls from UDH attempting to collect a debt that Pearson allegedly owed on a loan. (Compl. ¶ 8). The loan did not originate with UDH, but with a company called Plain Green. The underlying loan agreement is not attached to the Complaint. The Complaint is sparse on specifics with respect to the loan itself, but is clear that the interest

rate on the loan exceeded 200% and Plain Green was not licensed by the Illinois Department of Financial and Professional Regulation to provide loans whose interest rates exceeded 20%. (*Id.* ¶ 15). Because the interest rate on Pearson's loan exceeded the Illinois statutory limit, Pearson argues that it was void and unenforceable. (*Id.* ¶ 18). UDH nonetheless attempted to collect on the illegal debt in violation of the FDCPA, according to Pearson. (*Id.* ¶ 19). Pearson also seeks to represent a class of other individuals in Illinois from whom UDH attempted to collect debts made at interest rates exceeding the statutory limits.

UDH responded by moving to compel arbitration on an individual basis. (Dkt. No. 27). UDH attached to its motion a document that it claims is the loan agreement into which Pearson entered. (*See* Dkt. No. 27-1). That document states that Plain Green is a lender organized under the laws of the Chippewa Cree Tribe and that the loan is subject to the laws and courts of the Chippewa Cree Tribe.[1] (*Id.* p. 2). The document also contains a provision requiring arbitration of "any controversy or claim between [Pearson] and [Plain Green], its marketing agent, collection agent, any subsequent holder of this Note, or any of their representative agents, affiliates, assigns, employees, officers, managers, members or shareholders." (*Id.* p. 8). The document provides for arbitration conducted by the American Arbitration Association, JAMS, or any arbitration organization upon which the parties agreed. Arbitration under the agreement is "governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Chippewa Cree Tribe or the express terms of" the agreement. (*Id.*). The document also contains a waiver of ability to participate in a class action. (*Id*. p. 9).The validity, effect, and enforceability

---

[1] The Chippewa Cree Indians are a federally recognized Indian Tribal Entity located on the Rocky Boy's Reservation in Montana. *See* Indian Tribal Entities Within the Contiguous 48 States Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 80 Fed. Reg. 1,943 (Jan. 14, 2015).

of that waiver "is to be determined solely by a court of competent jurisdiction located within the Chippewa Cree Tribe, and not by the arbitrator." (*Id.*).

Pearson countered that UDH failed to provide sufficient evidence to authenticate the purported agreement and suggested that the document attached to UDH's motion to compel arbitration was not the loan agreement into which he entered. UDH did not provide an affidavit of an employee of UDH or Plain Green or any other evidence to authenticate the document attached to its motion to compel arbitration. Pearson submitted an affidavit acknowledging that he entered into a loan agreement, but disputing that he had ever seen any of the provisions of the document that UDH attached to its motion to compel arbitration. (*See* Dkt. No. 34-1). Pearson is no longer in possession of any document containing the terms of the loan agreement into which he entered.

## **LEGAL STANDARD**

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, against "centuries of judicial hostility to arbitration agreements . . . to place arbitration agreements upon the same footing as other contracts." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citations and internal quotation marks omitted). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir.2005) (citing 9 U.S.C. § 4). The procedure to determine whether a factual dispute as to any of these

elements precludes compelled arbitration mirrors summary judgment analysis. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002).

## DISCUSSION

### I. UDH has failed to demonstrate the existence of an agreement to arbitrate

The party seeking to compel arbitration must establish that an agreement to arbitrate exists. *See Gen. Ass'n of Regular Baptist Churches v. Scott*, 549 F. App'x 531, 533 (7th Cir. 2013); *see also, e.g.*, *Conway v. Done Rite Recovery Servs., Inc.*, No. 14 C 5182, 2015 WL 1989665, at *3 (N.D. Ill. Apr. 30, 2015) (Dow, J.) (citing Fed. R. Evid. 901(a)). The bar for authentication of an arbitration agreement is not high. "In determining authenticity [the Court follows] Fed. R. Evid. 901(a), which requires evidence sufficient to support a finding that the matter in question is what its proponent claims." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (internal quotation marks and citation omitted). Only after the proponent has introduced such evidence document does the burden shift to the opponent of the evidence to rebut the evidence of authenticity. *Id.* The failure to properly authenticate evidence is sufficient to preclude the Court from considering it, even if the evidence would have been admissible but for the failure to authenticate. *See Estate of Brown v. Thomas*, 771 F.3d 1001, 1005-6 (7th Cir. 2014). Compulsion of arbitration is inappropriate where the proponent of arbitration fails to produce evidence that an agreement to arbitrate existed. *See Scott*, 549 F. App'x at 532.

The Court is without sufficient evidence to find that there exists an agreement to arbitrate. The Complaint makes no mention of an arbitration provision in the underlying loan agreement and the loan agreement itself is not attached to the Complaint. Support for the existence of an arbitration provision is found exclusively in the document attached to UDH's motion. District courts routinely consider agreements containing arbitrations provisions referred

to within, but not attached to, the complaint, but only if the proponent of arbitration properly authenticates the document containing an arbitration provision through an affidavit or otherwise. *E.g. Conway*, 2015 WL 1989665; *Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175-76 (N.D. Ill. 2014); *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) (documents referred to in the pleading and central to claim may be considered by district court on motion to dismiss). Here, however, the record is devoid of evidence supporting the conclusion that the document attached to UDH's motion is the agreement into which Pearson entered and reference in the Complaint.[2] The document is not physically signed. No witness affirms that the documents were found in Plain Green or UDH's business records, that they were presented to Pearson when he took out his loan, or that the document actually bears Pearson's electronic signature.[3] UDH does not argue that the agreement constitutes any type of evidence that is self-authenticating under Rule 902 of the Federal Rules of evidence.

Nor has Pearson admitted through statements or conduct that the document attached to the motion to compel arbitration is the agreement into which he entered. Pearson agrees, of course, that he entered into *an* agreement with Plain Green; Pearson's theory of the case relies on the proposition that the terms of the agreement between Pearson and Plain Green were illegal. Contrary to UDH's characterizations, though, nowhere in either his affidavit or his brief does Pearson concede that he entered into *this* agreement. Even if UDH is correct that Pearson's affidavit does not specifically deny or provide evidence to dispute the document, it was not yet

---

[2] On this point, the record is light on argument as well. The section of UDH's brief that argues it has satisfied the three factors necessary to compel arbitration contains only two subheadings: "The Agreement contains a provision to arbitrate" and "Plaintiff has refused to arbitrate." (Dkt. No. 27 pp. 6-7).

[3] The "electronic signature" consists solely of the typed words SAMUEL B. PEARSON and I AGREE. (Dkt. No. 27-1 p. 11).

his burden to provide such information; the proponent of the document bears the initial burden of establishing the authenticity of the document. *Smith*, 242 F.3d at 741; *cf. Estate of Brown*, 771 F.3d at 1006 (failure to authenticate potentially dispositive evidence was "a fatal procedural error"). UDH failed to provide that evidence.

As they are unsupported by affidavits or other evidence, UDH's assertions in its brief that the document attached is the agreement into which Pearson entered are insufficient to authenticate the document. Unsworn statements by attorneys in briefs are not evidence on which the Court can rely. *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence"); *In re Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight."). Lacking any sworn evidence in support of the authenticity of the document and "in the teeth" of Pearson's affidavit stating that he never saw the document, UDH's unsupported assertion that the document is the agreement is insufficient to establish that an agreement to arbitrate existed. *See Scott*, 549 F. App'x at 534. UDH has not carried its initial burden of providing threshold evidence that demonstrates that the document is what UDH says it is. Without an agreement to arbitrate, the Court cannot compel arbitration.

**II. UDH has failed to demonstrate the existence of a written class action waiver or choice of law provision**

Because UDH has failed to establish that the document it produced is the agreement into which Pearson entered, its arguments based on the purported class action waiver and choice of law provisions contained within that document also fail.

### III. The doctrine of tribal exhaustion does not require this Court to dismiss or stay the action

In the alternative, UDH argues that the Court must dismiss or stay the action in order to allow the Chippewa Cree tribal court determine whether it has primary jurisdiction over the dispute. "The concept of federal court abstention in cases involving Indian tribes known as the 'tribal exhaustion rule' generally requires that federal courts abstain from hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in a tribal court." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 784 (7th Cir. 2014) (internal citation and quotation marks omitted). It is not well established that the doctrine applies in the absence of pending parallel tribal court litigation. *See id.* ("It is not at all clear, however, that the doctrine of tribal exhaustion requires a federal court to abstain from exercising jurisdiction when that exercise will not interfere with a pending tribal court action.").

Courts that have found the doctrine applicable when no parallel proceedings are ongoing have found the proponents of abstention must assert "a colorable claim that a tribal court has primary jurisdiction." *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuch Housing Auth.*, 207 F.3d 21, 28 (1st Cir. 2000). "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Jackson*, 764 F.3d at 782 (quoting *Montana v. United States*, 450 U.S. 544, 565 (1981)). Only in two "narrow situations" may a tribe exercise jurisdiction over nonmembers: "(1) a tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements; and (2) a tribe may retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or

the health or welfare of the tribe." *Id.* (internal quotation marks omitted). "The Tribe bears the burden of showing that its assertion of jurisdiction falls within one of the *Montana* exceptions." *Jackson*, 764 F.3d at 782 n.41 (quoting *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Miss. in Iowa*, 609 F.3d 927, 936 (8th Cir.2010)).

The doctrine is not applicable here because UDH has failed to make a colorable assertion of tribal court jurisdiction. No party argues that Pearson ever entered on Indian land or that the dispute presents any serious issues of self-governance of tribal land. *Compare Jackson*, 764 F.3d at 786 (no colorable claim for tribal jurisdiction where tribal entity offered payday loan to nonmember over the internet), *with Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 849-50 (9th Cir. 2009) (colorable claim that nonmember was subject to tribal jurisdiction existed when nonmember entered tribal land and started a 400,000 acre forest fire). Nor does the present case raise issues of the allocation of tribal resources. Pearson does not seek redress from Plain Green or any Chippewa Cree entity, but instead seeks damages from UDH, a Delaware LLC not affiliated with any tribe. In short, "[t]he present dispute does not arise from the actions of nonmembers on reservation land and does not otherwise raise issues of tribal integrity, sovereignty, self-government, or allocation of resources." *Jackson*, 764 F.3d at 786. The Court need not abstain based on the doctrine of tribal exhaustion.

## CONCLUSION

For the reasons stated herein, the motion to compel arbitration (Dkt. No. 27) is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 8/19/2015

8